# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EVALYNE KATHLEEN H.,[1]   )
                          )
**Plaintiff,**            )
                          )   CIVIL ACTION
v.                        )
                          )   No. 21-1020-JWL
KILOLO KIJAKAZI,[2]       )
Acting Commissioner of Social Security, )
                          )
**Defendant.**            )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's mental limitations, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING for further proceedings consistent with this decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.      Background**

Plaintiff protectively filed an application for DIB on December 13, 2018. (R. 12, 200). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating Plaintiff's mental impairments at step two of the sequential evaluation process (SEP).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the SEP.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.     Discussion**

In a rather drawn-out argument, Plaintiff claims the ALJ erred in various ways in finding her mental impairments not severe within the meaning of the Act and regulations. (Pl. Br. 11-27).  She argues he provided neither evidence nor rationale in support of his findings of mild or no limitations in the four broad mental functional areas, id. at 12-14, did not summarize or discuss Plaintiff's mental health treatment, id. at 15, did not cite or evaluate the opinions of the state agency psychological consultants in his decision, and in any case, those opinions are stale.  Id. 16-19.  Plaintiff argues the ALJ's step two evaluation is not harmless because the ALJ did not include functional limitations

4

attributable to her mental impairments in the RFC assessed nor consider those limitations at steps four and five of the SEP (Pl. Br. 19-20) and erred in discounting the medical opinions of Dr. Hackney, Dr. McKenney, or Ms. Williams, LPC, and the opinion of Plaintiff's husband. Id. 21-24. Finally, Plaintiff points to two earlier cases before this court in which the ALJ found the claimants' mental impairments not severe at step two of the SEP and found that each claimant could return to their past relevant skilled work at step four, but this court remanded because a finding of no severe mental impairment at step two does not equate to no mental limitations and the ALJ had not explained whether the claimants' mental abilities were sufficient to meet the mental demands of their skilled past relevant work. Richard De La T. v. Saul, CV 20-1070-JWL, 2020 WL 6798771 (D. Kan. Nov. 19, 2020) (past relevant work as a parts manager, with an SVP (specific vocational preparation) level of 7); Leah A. D. v. Saul, CV 19-1223-JWL, 2020 WL 2849475, at *5 (D. Kan. June 2, 2020) (past relevant work as a chief financial officer, with an SVP level of 8).

The Commissioner argues that the ALJ reasonably found Plaintiff has no mental RFC restrictions. She argues the mere presence of an impairment does not establish a severe impairment and that the ALJ appropriately considered the four broad mental areas (the paragraph B criteria of the mental listings) and found Plaintiff no more than mildly limited in each of them. (Comm'r Br. 11). She argues, contrary to Plaintiff's assertions, the ALJ cited to evidence supporting his decision, specifically normal mental status examinations, and explained his evaluation of the medical opinions of Dr. Hackney, Dr. McKenney, and Ms. Williams. Id. at 12-14. Next, the Commissioner argues that

Plaintiff failed in her burden to demonstrate her depression was a severe impairment. (Comm'r Br. 14-15).  Finally, in an apparent response to Plaintiff's citation of Richard De La T., and Leah A. D., the Commissioner argues, "a finding that an impairment causes mild limitations does not require restrictions in the RFC."  Id. at 16 (citing Beasley v. Colvin, 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis.")).

In her Reply Brief, Plaintiff argues the ALJ did not evaluate the paragraph B criteria but merely listed his conclusions in that regard without explanation.  (Reply 1). She then provides her view of the persuasiveness of the opinions of Dr. Hackney, Dr. McKenney, and Ms. Williams.  Id. 2.  Finally, she argues the Commissioner's apparent response to the cases of Richard De La T., and Leah A. D. is merely "an unpublished Tenth Circuit case that does not address [Plaintiff]'s position."  Id.

### A.     The Step Two Standard

An impairment is not considered severe if it does not significantly limit a plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d

6

1349, 1352 (10th Cir. 1997). A claimant need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on a claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

In Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008), the court held that once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Later, in Hill v. Astrue, 289 F. App'x. 289, 291-92, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining the claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

### B.     The ALJ's Relevant Findings

At step two, the ALJ found Plaintiff has a medically determinable mental impairment of depressive disorder which causes no "more than minimal limitation in the [Plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere."

(R. 14) (emphasis added). He explained his consideration of the broad areas of mental functioning in the disability regulations for evaluating mental disorders and in the Listing of Mental Disorders:

> These four broad functional areas are known as the "paragraph B" criteria. The first functional area is understanding, remembering or applying information. In this area, the claimant has a mild limitation. The next functional area is interacting with others. In this area, the claimant has no limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has a mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has a mild limitation.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).
>
> In making this finding, the undersigned has considered the opinion of the consultative examiner, Gary Hackney, Ph.D., who opined that the claimant could understand and perform simple tasks in an average amount of time, while sustaining concentration in routine activity and keep a work scheduled with average performance demands. Dr. Hackney also opined that the claimant can maintain adequate relationships with coworkers and supervisors. (Exhibit 7F [R. 614-18]).
>
> This opinion is somewhat persuasive. It is supported by an examination, which showed no limitations or very mild functional limitation. To the extent that Dr. Hackney's opinion can be read to suggest that the claimant must be limited to simple tasks, the opinion is not consistent with the examination or other objective evidence of record. Thus, it cannot be fully persuasive.

(R. 15) (underline in original). The ALJ found Dr. McKenney's Mental Medical Source Statement unpersuasive because it was a checkbox form, because it was inconsistent with Plaintiff's performance at Dr. Hackney's examination, and it was not supported by Plaintiff's normal mental status examinations throughout the period. <u>Id.</u> He also found

8

Ms. Williams's opinion unpersuasive because her treatment records did not include detailed mental status exams and her opinions were inconsistent with Plaintiff's performance at Dr. Hackney's examination, and with periodic mental status exams.  (R. 15).

The ALJ found Plaintiff has the RFC for a range of sedentary work with no mental functional limitations.  Id. at 17.  He noted that Plaintiff "testified to mental exhaustion due to lack of sleep and from medications, which interferes with her ability to focus," and found her allegations of the "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision".  Id. at 18.  In evaluating Plaintiff's daily activities, the ALJ noted he

> does not conclude that the claimant's daily activities are unlimited, as her residual functional capacity reflects that her physical <u>and mental limitations</u> likely posed some restriction on her daily activities.  However, the evidence and resulting functional limitations do not result in a finding that the claimant would be unable to perform a range of sedentary work as set forth above.

Id. at 22 (underline added).  He then concluded:

> In sum, the facts contained in the record do not dispute that the claimant has conditions, which singly or in combination, may cause functional limitations.  What the evidence suggests, however, is that the claimant's symptoms may not exist at the level of severity asserted by the claimant's testimony at hearing, and do not have the negative impact upon the claimant's ability to engage in work activity that has been alleged.  The above residual functional capacity, as determined by the undersigned, gives adequate weight to the reliable evidence regarding the extent of the claimant's functional impairment.

Id. at 22-23.

At step four, the ALJ considered Plaintiff's past relevant work and concluded she can perform it as it is generally performed in the national economy:

> The record confirms that the claimant worked as a secretary, (DOT 201.362-030), sedentary, SVP 6, and customer service representative, (DOT 241.367-014), sedentary, SVP 5. The undersigned, after a review of the file, finds the aforementioned jobs meet the standards for past relevant work set forth by the agency (20 CFR 404.1565). Specifically, these jobs were performed within the past fifteen years, were of long enough duration to allow the claimant to fully learn all duties of the job, and were performed at the substantial gainful activity level.
>
> At hearing, the vocational expert responded that a person with the claimant's residual functional capacity as described above would be able to perform each, and every duty of the job cited above, as generally performed.
>
> Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned concurs with the vocational expert, and finds that the claimant was able to perform her past relevant work. Thus, the record as a whole supports that despite her impairments the claimant remains capable of performing her past relevant work, as generally performed.

(R. 23) (citations to the record omitted).

### C.   Analysis

When an ALJ finds one or more impairments severe at step two of the sequential evaluation process, the issue is not whether another impairment is also severe but whether the ALJ considered all the claimant's limitations when assessing RFC and at steps four and five of the process. Hill, 289 F. App'x at 291-92; Brescia, 287 F. App'x at 628-629. Thus, the issue here is not whether Plaintiff's mental impairments are severe within the meaning of the Act and regulations, but whether the ALJ considered all limitations resulting from her mental impairments when assessing her RFC and when determining

10

whether she is able to perform the mental demands of her past relevant work at step four of the sequential evaluation process. Although the ALJ stated the RFC he assessed "gives adequate weight to the reliable evidence regarding the extent of the claimant's functional impairment" (R. 23) and stated he had compared Plaintiff's "residual functional capacity with the physical and mental demands of [her past relevant] work," the court finds that the decision and the record evidence does not reflect that the ALJ actually compared Plaintiff's mental abilities with the mental demands of her past relevant work which was skilled work with an SVP of 5 or 6.

The ALJ's error was in assuming that the mental ability to perform <u>basic</u> mental work activities equates with an ability to perform <u>all</u> mental work activities. The ALJ found that Plaintiff has mild limitations in the three broad mental functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and in adapting or managing oneself. (R. 15). Therefore, in accordance with these findings, the ALJ found there is no "more than a minimal limitation in the claimant's ability to do <u>basic work activities</u>" and found her mental impairment is not severe. <u>Id.</u> (emphasis added) (citing 20 C.F.R. § 404.1520a(d)(1)).

Basic mental work activities are defined in the regulations as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522. Social Security Ruling (SSR) 96-8p reiterates, "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember

11

instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *6 (SSA July 2, 1996). The SSA recognizes more mental abilities than those required for basic work activities. POMS (Program Operations Manual System) DI 25020.010(B)(4) (SSA April 5, 2007). POMS DI 25020.010(A)(3) reiterates,

> a. The **basic mental demands of** competitive, remunerative, **unskilled work** include the abilities (on a sustained basis) to:
> 
> o  understand, carry out, and remember simple instructions;
> 
> o  make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
> 
> o  respond appropriately to supervision, coworkers and work situations; and
> 
> o  deal with changes in a routine worksetting.

In this POMS the SSA has identified 14 basic mental abilities needed for any job, POMS DI 25020.010(B)(2), specific aspects of which are critical for performing unskilled work. Id. DI 25020.010(B)(3). The agency recognizes that semiskilled and skilled work also require the 14 basic mental abilities noted above and often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." Id. DI 25020.010(B)(4) (bold in original, underlines added). The agency recognizes that in

semiskilled and skilled work "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves." Id.

Here, the ALJ found Plaintiff's mental impairments are not severe because they cause no more than mild limitations on the four mental functional areas and by implication have no more than a minimal effect on her abilities to perform basic mental work activities. He found that she is able to perform her past relevant skilled work as a secretary (SVP 6), or customer service representative (SVP 5), and stated he had compared the mental demands of that work with Plaintiff's RFC. But there is no record evidence suggesting the actual, specific mental abilities demanded by that work (beyond the general statement of an SVP of 5 or 6) and there is no discussion in the decision at issue or in the hearing colloquy between the ALJ and the VE regarding the increased mental abilities required to perform the job and no specific discussion or finding that Plaintiff has mental abilities greater than those necessary to perform basic mental work activities.

While the ALJ was correct to note that Dr. Hackney's opinion should not be read to suggest that the claimant must be limited to simple tasks, the ability to perform more than simple tasks does not invariably equate to the ability to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others as is required by Plaintiff's skilled past relevant work. What the ALJ appears to have missed is the difference between evaluating the severity of limitations and restrictions resulting from mental impairments at steps two and three of the sequential evaluation process based upon the broad functional areas identified in the

psychiatric review technique and assessing mental RFC. As SSR 96-8p explains, "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four mental functional areas. 1996 WL 274184, *4. RFC must be expressed in terms of specific work-related functions. Id. a *6. Therefore, an ALJ should not state a mental RFC in terms of the four functional areas but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand. Id.

As did the ALJ, the state agency psychological consultants each found mild limitations in three of the four broad mental functional areas and no limitations in the other and concluded that Plaintiff's mental impairments are not severe. (R. 74, 90). In each Disability Determination Explanation, the agency found an "RFC Assessment Necessary (Physical and/or Mental)." (R. 75, 91). In each of the Explanations the agency performed a physical RFC assessment but no mental RFC assessment, stated, "This RFC assessment, based on all of the relevant evidence, is a function-by-function evaluation of the individual's exertional and non-exertional capabilities which are required to perform work activities," and determined that Plaintiff can perform skilled past relevant work as an Administrative Assistant as it is generally performed. (R. 79-80, 97).

In this case, no one performed a function-by-function assessment of each of the 20 mental functional abilities encompassed within the four broad mental functional areas. Beyond the Explanations' conclusory statement that it's RFC assessment is a function-

14

by-function evaluation of Plaintiff's non-exertional capabilities, there is simply no record evidence anyone considered whether Plaintiff has the ability to understand and remember detailed instructions, to carry out detailed instructions, or to set realistic goals or make plans independently of others as is required by skilled work.  The finding that Plaintiff's mental impairments are not severe is a finding that her mental impairment do not have more than a minimal effect on her ability to do <u>basic</u> work activities.  20 C.F.R. § 404.1522.  The abilities to understand and remember detailed instructions, to carry out detailed instructions, or to set realistic goals or make plans independently of others are not <u>basic</u> work activities.  20 C.F.R. § 404.1522(b); POMS DI 25020.010(B)(4). Therefore, at step four of the sequential evaluation process in deciding whether a claimant who has medically determinable mental impairments which are not severe can perform semi-skilled or skilled past relevant work, it will be necessary for the adjudicator to consider whether the claimant can perform the mental abilities needed to do semi-skilled and skilled work as set out in POMS DI 25020.010(B)(4).

Beyond conclusory statements in the agency's Disability Determination Explanation at the initial and reconsideration level and the ALJ's conclusory statement Plaintiff is able to perform her past relevant work, there is no record evidence the agency ever considered whether Plaintiff has the abilities needed to do skilled work.  Contrary to the Commissioner's appeal to <u>Beasley</u>, 520 F. App'x at 754, the issue here isn't whether the ALJ included adequate limitations in his RFC assessment, but whether he considered Plaintiff's ability to meet the mental demands of her past skilled work. To the extent the Commissioner may be arguing that a mental impairment which is not severe could not

15

preclude semi-skilled or skilled work per se, that argument does not square with the definition of a not severe impairment: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a) (emphasis added).  Moreover, Plaintiff does not cite to legal authority holding such position.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING for further proceedings consistent with this decision.

Dated February 23, 2022, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**